KLIEBERT, Judge.
Bee Enterprises, Inc., plaintiff-appellant, sued their employee, Evelyn Dennis and her husband, Charles Dennis, for an alleged wrongful conversion of funds owned by Bee. The trial judge found Bee had failed to prove the conversion and hence dismissed the suit. Bee brought this devolutive appeal. On the appeal, Bee asserts two specifications of error: (1) the trial judge erred in finding Bee did not prove the conversion by a preponderance of the evidence and (2) in finding Bee had to prove either possession or conversion of credit card receipts in order to prove a wrongful conversion. We agree with the trial judge’s findings and hence affirm his judgment.
Bee is owned and operated by its sole stockholder, Ken Bee. It is involved in the gasoline retail business, operating three leased Shell self-service gasoline stations. Evelyn Dennis was hired on September 16, 1976 as a station attendant and eventually became the station manager at Bee’s Bara-taría Boulevard location. According to Bee, during the period October 1, 1979 through June 19, 1980, Mrs. Dennis wrongfully converted $8,700.51 of its funds and used some of the funds for the benefit of the community of acquets and gains existing between she and her husband.
At the trial, counsel for Bee contended Mrs. Dennis converted the cash to her own use and then overstated the credit card sales on the accounting records in order to cover the cash shortage. His effort was to prove the conversion by showing that under the accounting control system used by Bee, Dennis was the only party who could have manipulated the records in order to cover the cash shortage.
During the trial, Mr. Ken Bee testified at great length as to the station’s operations. The stations were open twenty-four hours a day with each attendant, including the manager, working an eight hour shift five days a week. Purchases of gasoline were paid for in cash, by Shell credit card or with what is commonly referred to as bank credit cards (i.e., VISA, Mastercharge). Each attendant prepared a “Shift Sheet” for the eight hour period worked. This “Shift Sheet” would reflect meter readings on the gasoline pumps showing the number of gallons pumped and the gross sales as of the beginning and end of the shifts. It also showed a breakdown between cash sales and credit card sales. In preparing the sheet, the attendant ending an eight hour period would verify the next attendant’s opening figures and accordingly, the new attendant would verify the closing figures of the preceding attendant. The station manager would prepare a shift sheet for the eight hour period she worked and additionally prepared a “Master Sheet” every twenty-four hours which would be a compilation of the figures recorded on her shift as well as of the other two shifts. The station manager’s duties included verifying the figures on the shift sheets as well as inventorying the credit and bank card receipts and the cash on hand. It additionally included physically counting the cash on hand and tabulating the cash receipts in order to complete the master sheet. The station manager also was to deposit the cash at a local bank every day. Deliveries of gasoline were made to the individual stations by Shell on a periodic basis (usually every three days). Upon delivery, payment was immediately made to the deliveryman. Whichever attendant was on duty at the time of delivery was authorized to make payment. This was accomplished by first, turning over credit and bank card receipts and second, with a check drawn on the already deposited cash for whatever balance was still due. The credit and bank card receipts were maintained at the station and *1009 not turned in with the “shift” and “master” sheets.
Mr. Ken Bee alleged and testified that Mrs. Dennis manipulated the figures on her “Shift Sheet” and “Master Sheet” by inflating the credit card and bank card sales recorded on her sheets and converting to her own use cash in an amount equal to the amount the credit and bank card sales were inflated.
The amount alleged to have been converted by Mrs. Dennis was computed by determining the total bank and credit card sales reported on the sheets for the period October 1, 1979 thru June, 1980 and deducting therefrom the total of the bank and credit card sales reported as having been used to purchase gasoline from Shell during the same time period. The difference as computed from the master sheets was $8,892.36 and according to Bee represented the credit card receipts which should have been on hand at the station as of June 22,1980. On a physical check, the actual value of the credit cards on hand at the station was $191.25. Therefore, Bee contends the difference, i.e., $8,700.51 was cash converted by Mrs. Dennis. The conclusion Dennis had converted the cash was buttressed with the following testimony elicited at trial. Mr. Bee testified he became suspicious when he noticed an unusually high amount of credit and bank card sales. To confirm his suspicions, Mr. Bee went out to the station shortly after Dennis had completed her shift. He made a physical count of the bank and credit card receipts on hand and found bank card receipts totalling $33.80 and Shell credit card receipts of $307.84. Contrary to company policy, Dennis had not as yet prepared her “shift sheet” for the shift. The next day, June 20, 1980, when Dennis turned in her “Shift Sheet”, it reported credit card receipts at the station of her shift as $133.80 and Shell credit card receipts as $449.84. Since he believed Dennis had inflated the inventory of credit card sales by $240.00, he concluded she had converted this amount and understated the cash sales by the same amount. He confronted her with evidence. Since she made no explanation, he terminated her employment.
The testimony of Mr. Richards, one of Mrs. Dennis’ co-workers was also submitted. He testified to an incident where he was verifying the shift sheets and found where Mrs. Dennis’ shift reflected a credit card receipt shortage of $40.00. She asked him to put up $40.00 in cash for her and she would return his funds in the morning. He did that for her and she in turn returned his money.
In a case such as this, Bee is required to prove his claim by the preponderance of the evidence. By preponderance of evidence is meant evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it, i.e., the evidence as a whole shows that the fact sought to be proved is more probable than not. Braud v. Kinchen, 310 So.2d 657 (La.App. 1st Cir.1975).
No direct evidence or testimony was presented by Bee to prove the conversion. Rather, it sought to prove its case by circumstantial evidence. When proof is made by circumstantial evidence, the evidence must be sufficient to exclude, with a fair amount of certainty, every other reasonable hypothesis but the one relied on. Braud v. Kinchen, supra.
Here there was evidence present and showing Mrs. Dennis worked only a five day week with the assistant manager acting in her capacity for the remaining two days. In one month, out of 31 master sheets, relied on by Bee to prove the cash shortage, nine were prepared by someone other than Mrs. Dennis and twenty-two were prepared by Mrs. Dennis. Further, the credit card receipts were kept in the office and any employee at the station during any twenty-four hour period had access to these receipts. There is one other reasonable hypothesis which would explain the missing credit card receipts. The cards could have been lost, destroyed or stolen by any number of people besides Mrs. Dennis and people other than Mrs. Dennis could have, under the accounting control system, used the *1010 same scheme as the one Mrs. Dennis is accused of using. See Young Oil Company of Louisiana v. Durbin, 412 So.2d 620 (La.App. 2nd Cir.1982) and Kaufman v. Gregory, 178 So.2d 300 (La.App. 4th Cir.1965). Counsel for Bee argues Mrs. Dennis is the one who utilized the scheme because she verified the “shift sheets” of the others. She did not, however, verify the master sheets or the shift sheets when the assistant manager was on duty which was at least twice a week.
We cannot say, therefore, that the trial judge erred in concluding Bee failed to prove its case. Accordingly, the judgment of the trial court is affirmed. Appellant to pay all costs of the appeal.
AFFIRMED.