472 So.2d 60 (1985)
Bertha KINCADE, et al.
v.
Donald E. DOLL, et al.
No. CA-2873.
Court of Appeal of Louisiana, Fourth Circuit.
May 8, 1985.
Rehearing Denied July 26, 1985.
*61 Roger B. Jacobs, Peter H. Graber, New Orleans, for defendant/appellees.
Jacob Kansas, New Orleans, for plaintiff/appellant.
Before LOBRANO, BYRNES and ARMSTRONG, JJ.
*62 LOBRANO, Judge.
This appeal arises out of a suit filed by appellants, Bertha Kincade and Iris Whitmore (Kincade) against appellees, Donald E. Doll and Gregory Doll, administrators of the succession of their father Donald A. Doll (the heirs) seeking recovery for damages Kincade sustained to her camp from a fire which occurred in the early morning hours of November 13, 1974. The camp was located at Route 6, Box 289-E at Irish Bayou in the City of New Orleans. Kincade resided across the highway from the camp which she rented to Donald A. Doll (Doll).
In her petition, Kincade alleges that Doll's "gross negligence and inattention" were the sole proximate cause of the fire. Doll, who was badly burned, lived approximately two months. He died as a result of those injuries. He was never able to speak and no statement of any kind was given by him as to the cause of the fire.
The matter came to trial on March 14 and 15, 1984 before the Honorable John Holahan, Commissioner and Judge Ad Hoc. Judgment was rendered on May 18, 1984 in favor of the heirs dismissing Kincade's suit.

FACTS:
During the early morning hours of November 13, 1974, a truck driver, Harold Roberts, while driving along an adjacent highway, observed flames emanating from the center of the roof of the camp occupied by Doll. He stopped his truck and observed Doll attempting to exit from the front door. Enlisting the aid of another truck driver, Paul Ellis, the two men forced the door open and rescued Doll. They brought him across the street to the camp owned and occupied by Kincade. The fire consumed all of the roof, ceiling, interior walls and some flooring.
Kincade asserts that it was the gross negligence of Doll, in dropping a smoldering match or cigarette into the living room sofa, that caused the fire. No direct evidence in support of this claim was presented. Kincade's proof consisted solely of the testimony of George Pappas, chemical engineer and fire investigation expert for Shilstone Laboratories and other circumstantial evidence. The trial court held that the circumstantial evidence presented fell short of causing a shift in the burden of proof to the defendants to prove other possible causes of the fire. Kincade appeals the lower court judgment alleging:
1) that the trial court erred in finding Kincade did not carry the requisite burden of proof because the circumstantial evidence required in civil negligence need not negate all other possible causes of injury.
2) that the trial court erred in allowing the report of the New Orleans Fire Department into evidence absent the testimony of the person who prepared the report.

SPECIFICATION OF ERROR 1:
This case is governed, as in any civil case, by a determination of the preponderance of the evidence. Preponderance of the evidence simply means "... evidence which as a whole shows that the fact or causation sought to be proved is more probable than not." Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972). See also, Townsend v. State Department of Highways, 322 So.2d 139 (La.1975).
Causation may be proved by direct or circumstantial evidence but must exclude other reasonable hypothesis with a fair amount of certainty. Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963). The often cited guidelines in determining whether there has been sufficient circumstantial proof presented was enunciated by our Supreme Court in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). The high court stated:
"In describing this burden of proof, the courts sometimes speak of proof to a `reasonable certainty' as to a `legal certainty'; or of proof by evidence which is of `greater weight' or `more convincing' *63 than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypothesis than the defendant's tort with `a fair amount of certainty'. Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." Id. at 155.
See also, Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162 (1963); Enterprises, Inc. v. Dennis, 425 So.2d 1007 (La.App. 5th Cir. 1983).
Equally important in the evidentiary scheme of circumstantial evidence is the doctrine of res ipsa loquitor. The applicability of this rule is determined at the conclusion of the trial when the facts suggest that it was the negligence of the defendant that was the most plausable explanation of the damage to the exclusion of every other cause without the necessity of proving the exact negligent act. Boudreaux v. American Insurance Company, supra.; King v. King, 253 La. 270, 217 So.2d 395 (1968); Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389 (1957).
Equally clear, however, is the principle that the application of res ipsa loquitor is defeated if an inference can be drawn that the damage was due to a cause other than defendant's negligence just as reasonably as one that it was due to his negligence. Boudreaux v. American Insurance Company, supra.
Applying the above principles of law to the evidence presented by Kincade, we agree with the lower court that she failed to carry her burden of proving by a fair amount of certainty that Doll's negligence was the most plausable cause of the fire to the exclusion of any other reasonable cause. Her circumstantial proof consisted of fire statistics, testimony that no one saw anyone else with Doll during the hours preceding the fire, testimony that Doll smoked cigarettes and the opinion of fire expert, George Pappas who conducted his investigation two months after the fire.
Pappas opined that the fire began in the living room, specifically inside the sofa. He theorized that someone (it was never determined who or when) dropped a match or cigarette into the sofa which smoldered for several hours and finally "flashed over" setting the entire room ablaze. His theory was based solely on the fact that this area of the camp was the most heavily damaged and that fire statistics for the year 1971 to 1978 showed that 16.9% of residential fires were caused by cigarettes. The logical implication being that 83.1% were caused by something else. There was no other evidence to substantiate his theory.
To the contrary, however, other testimony and evidence creates serious doubts as to the certainty of Pappas' theory. The truck drivers who rescued Doll, testified they were able to walk into the living room where Pappas claimed the "flash over" occurred. They described how they went several steps into the camp and found Doll on the floor. Harold Roberts described the flames as a "wall of fire" coming from the middle of the camp at least ten to fifteen feet in front of them. Both walked into the burning camp in contradiction to Pappas' supposition that they would have had to crawl and even then, their faces would have burned. Doll's son, Gregory another eye witness to the fire, also testified that the flames were located in the middle and back of the house, contradicting Pappas' theory.
Donald and Gregory Doll and Doll's ex-wife, Zita, all testified that sometime prior to the fire there existed a constant odor of gas in the camp. Gregory testified he had seen his father, a retired employee of New Orleans Public Service, attempt to repair leaks in the gas pipes on several occasions. He further testified that two weeks prior to the fire he burned his foot on the living room gas heater located next to the sofa; *64 the same heater Pappas claimed was not connected.
If we were to accept Pappas' theory of a smoldering cigarette or match in the sofa as the most plausable cause of the fire, we must assume that Doll acted in a totally irrational manner when confronted by the fire. Our Courts have entitled the decedent to the presumption that he would act in such a way as to preserve his safety and his life.
"One is presumed to act in response to natural instincts of self preservation and not expose one's self to unnecessary risk of death." Davila v. Southern Pacific Transportation Company, 444 So.2d 1293, 1297 (La.App. 5th Cir.1984), writ den. 447 So.2d 1079 (La.1984).
Pappas testified that if a person had been on the sofa when the "flash over" occurred, he, his clothes and everything else would have burned. However, all eye witnesses, including Kincade, testified that when Doll was rescued his body and face were burned but not his pants and shirt. The obvious conclusion is that if the fire in fact began in the living room sofa, then Doll was not on it. Furthermore, it defies logic that if Doll was in the bedroom, and the fire had started in the living room, that he would have tried to exit the premises through a burning living room, rather than exit through the back door to relative safety. This reasoning can very easily lead to a conclusion that the fire may have started in the bathroom or bedroom.
Unfortunately in most fire cases there are no eyewitnesses nor direct evidence as to cause. In instances such as the case before us, a plaintiff relying on circumstantial evidence, must prove by a preponderance to the exclusion of other plausable explanations. We agree with the court below that the circumstantial evidence in this case falls short of that requirement.

SPECIFICATION OF ERROR 2:
Kincade asserts that the trial court erred in allowing into evidence records of the New Orleans Fire Department as to the cause of the fire. She further asserts that if the reports are found to be admissible, the report of November 14, 1974 establishes Doll's negligence in that it states as the cause of the fire "lighting space heater". Kincade opines that since the report does not indicate a defect in the heater, then obviously the negligence was in Doll's turning the gas on too far in advance of placing the flame to the gas.
In objecting to the admissibility of the reports, Kincade relies on this Court's holding in Ziemba v. City of New Orleans, 411 So.2d 697 (La.App. 4th Cir.1982). In Ziemba, however, there was no testimony or evidence that the police officer who prepared the report was unavailable. In the instant case, Captain Hughes of the New Orleans Fire Department, testified that both men were retired from the department, that Bergeron had suffered a heart attack and that their whereabouts were unknown. He further testified that the reports in question were prepared by Captain Lassue in the normal course of his duty as captain at the scene of the fire and by investigating officer Bergeron in the normal course of his duty as fire prevention inspector. The records were stamped "certified as true copies" and Hughes testified that they were kept as part of the normal business records of the New Orleans Fire Department. Thus, the reports meet the requirements for allowing into evidence records of parish and municipal governmental agencies and the ruling of their admissibility is correct. LSA R.S. 13:3711; Ziemba v. City of New Orleans, supra.
Although we have concluded the reports were admissible as official records of the New Orleans Fire Department, the conclusions contained therein as to the cause of the fire cannot be given any weight. First, they are in conflict as to the cause of the fire.[1] Second, they constitute nothing more than hearsay evidence of expert testimony; *65 and third, no cross-examination was possible.
Since we have not relied on any conclusionary opinions in those reports in reaching our decision, we reject Kincade's argument that the reports are proof of Doll's negligence.
For the foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal to be paid by appellant.
AFFIRMED.
NOTES
[1] Captain Lassue listed the cause as "lighting space heater" while Fire Prevention Officer Bergeron concluded the cause was "lighting butane service oven."