WARD, Judge
Linda Beslin and Barbara Beslin Perez sued Charity Hospital of New Orleans for *514 emotional distress which they allegedly sustained because Charity failed to properly preserve the body of their mother, Rose Beslin, after she died at Charity. Charity’s negligence, plaintiffs claim, caused accelerated postmortem bodily changes which made it impossible to have relatives and friends view their mother’s body at an open casket wake.
The Trial Judge determined that the body was not kept properly refrigerated at Charity because the evidence showed that it had reached a stage of decomposition which “is not reasonable if the body was properly refrigerated.” Judgments were rendered against Charity and in favor of plaintiffs for $5,000 each.
Charity appeals, assigning error to the Judge’s finding of negligence and to the damage awards. We find that plaintiffs failed to prove that Charity Hospital breached a duty owed to them and therefore reverse. As a consequence, we need not consider Charity’s assignments of error as to the award of damages.
On October 14, 1983, Rose Beslin, 64 years old, was admitted to Charity after she lapsed into a semi-comatose state. The following morning, she died of a heart attack. Charity notified her family. Her daughters and her son-in-law went to Charity to view the body before it was taken to Charity’s morgue. The body arrived at the morgue within three hours of death.
The next morning, October 16, the doctor who conducted an autopsy noted accelerated postmortem changes in the body. On October 17, the body was released to the funeral home for funeral preparation and, after examining the body, the mortician informed the family that an open casket wake was inadvisable because of the condition of the body. On October 18, Mrs. Breslin’s son-in-law had photographs taken of the body at the mortician’s suggestion.
In its brief to this Court, Charity points out that plaintiffs offered no direct evidence establishing negligence. Indeed, the documentary evidence as well as testimony from the morgue attendents indicate that Mrs. Beslin’s body was treated similarly to other bodies in the morgue and was properly refrigerated.
The experts at trial failed to conclusively explain the cause of the accelerated postmortem changes, an occurrence generally described as an unexpected phenomenon. Except for the doctor who conducted the autopsy, all of the testifying experts “observed” the body only through the photographs taken after the body was released from Charity. The Trial Court’s reasons for judgment indicate that because the experts had never seen a case in which a properly and promptly refrigerated body displayed the degree of decomposition observed in this case, Charity must have been negligent.
The manner in which the Trial Judge reached this conclusion, suggests that he relied on the doctrine of res ipsa loquitur to supply the inference of negligence. This was error. Res ipsa loquitur is appropriately applied in the absence of direct evidence, when the circumstantial evidence indicates that some negligence by the defendant is the most probable cause of plaintiff’s injury. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979). However, if it is equally reasonable to infer that something other than the defendant’s negligence caused the injury, res ipsa loquitur does not apply. Kincade v. Doll, 472 So.2d 60 (La.App. 4th Cir.), writ denied 477 So.2d 105 (La.1985).
It is possible that Charity did not refrigerate Beslin’s body notwithstanding the proof that the body was promptly taken to the morgue. There is evidence, however, which rebuts plaintiffs’ assertion that the refrigeration equipment malfunctioned. Upon viewing the body, the doctor who conducted the autopsy first suspected a problem with the refrigeration system. His subsequent investigation of this potential problem satisfied him, as well as Charity’s director of postmortem and autopsy service, that the refrigeration unit had not malfunctioned. This evidence did not establish that Charity’s negligence caused the accelerated decomposition; it merely established that a lack of prompt refrig *515 eration was one possible explanation for the condition of the body.
Moreover, the testimony also established several other plausible explanations for the condition of the body. Charity’s experts testified to circumstances or conditions of the body which could have caused the accelerated postmortem changes notwithstanding proper refrigeration. Factors which could have caused the changes include: the presence of gas-producing organisms in the blood; infection in the body which could have caused these gas-producing organisms to proliferate prior to death; and an extremely high blood sugar level which could have caused the organisms to multiply and diffuse quickly, even if retarded somewhat by refrigeration. Additionally, the intended effect of refrigeration could have been countered by Mrs. Beslin’s obesity and by the fact that she had high fever the day before she died indicating that her body temperature may have been abnormally high at death.
These factors, considered alone or in combination, provide a plausible explanation for the unusual condition of Mrs. Bes-lin’s body; that is, the accelerated rate of decomposition could have been caused by circumstances peculiar to Rose Beslin’s health, condition, or death. On balance, the evidence demonstrated that the decomposition could have been caused by natural processes as easily as it could have been caused by negligence. Under these facts, where the occurrence could have resulted from different causes, it is erroneous to rely upon the doctrine of res ipsa loquitur. Because Charity’s negligence was not proved and cannot be inferred, Charity is not liable for damages.
Accordingly, the judgment of the Trial Court is reversed. All costs of this appeal are assessed to plaintiffs.
REVERSED.