623 So.2d 100 (1993)
C.G. WHITLEY, M.D. and M.G. Bourgeois, M.D., A Medical Partnership
v.
Bill MANNING.
No. 92 CA 1177.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
Writ Denied November 12, 1993.
*101 Brian M. Tranchina, Lippman, Mahfouz, Martin & Larocca, Morgan City, for plaintiff.
Robert P. Fuhrer, Morgan City, for defendant/appellant.
Before CARTER, LeBLANC and PITCHER, JJ.
LeBLANC, Judge.
This appeal comes before this Court from an adverse judgment rendered against Bill Manning, defendant-appellant, by the trial court. We affirm.

FACTS
Bill Manning was employed as office manager by Drs. Whitley and Bourgeois, plaintiffs, during the period from January 1, 1981, through February 23, 1983. The doctors sued Manning alleging that during this time, he converted an amount in excess of $48,216.00, to his own use. Although reported to law enforcement officials, Manning was not prosecuted.
At trial Dr. Bourgeois, other office employees, and Guy Pitts, a C.P.A., testified for plaintiffs. Dr. Bourgeois and other office employees testified as to the responsibilities assigned to Manning, including the duty to manage the entire office and personnel, and all collecting and posting of payments on patient accounts. During the time period in question, the doctors requested Manning "keep better records", and the doctors utilized a new accounting method to improve office record keeping. When the record keeping did not improve, the doctors intentionally placed an additional fifty dollars in the cash register, expecting a fifty dollar overage to show up. However, the account balance did not indicate an overage. Manning did not, at any time, report any cash missing or a cash overage. The doctors confronted Manning, who denied responsibility. Nevertheless, the doctors fired Manning. After defendant left the doctors' offices, cash was found on the floor near the cash register and the safe.
Guy Pitts was engaged to review the financial records of the medical practice for the period in question. Employees of the medical office, using instructions prepared by Pitts, reconstructed the financial records, utilizing all patient account ledgers, receipts, and deposit slips. Pitts then reviewed the work done by the office personnel, finding an *102 error rate of between 2.7% and 6.42% and determining the sum of $58,334.54 was collected by the medical practice in cash, but not deposited into the partnership's bank account during the period.
George Trappey, a C.P.A., testified for the defendant. He stated he did not speak with any employees of the medical practice, but randomly spot checked the reconstruction of the patient accounts. He testified that using an error rate of 6.42% could account for some or all of the $58,000.00 alleged taken by Manning. However, he admitted Manning's position in the office made him the likely person to know if cash was missing.
No one testified to actually seeing defendant take any money for his own use.
During the period immediately following defendant's dismissal, the medical partnership enjoyed a significant increase in income, including double the percentage of cash receipts, despite the continued local recession.
The trial court found by a preponderance of the evidence, that Manning converted a substantial amount of money from the medical partnership. Applying the higher error rate of 6.42% to the $58,334.54 amount of cash not accounted for, the trial court awarded plaintiffs the sum of $54,589.46, and credited defendant with $150.00, the amount of cash found in the office on the floor the day Manning was fired.
Manning appeals, assigning as error, the trial court's finding that plaintiffs proved their case by a preponderance of evidence, even though the evidence failed to exclude other reasonable hypotheses with a fair amount of certainty. Defendant argues that because "statistical probabilities [are] nothing more than educated guess work and conjecture", they are insufficient to carry plaintiffs' burden of proof.

LAW
In a civil case, the plaintiffs' burden is to prove their case by a preponderance of the evidence. Lacey v. La. Coca-Cola Bottling Co., Ltd., 452 So.2d 162, 164 (La.1984). By preponderance of evidence is meant evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it, i.e., the evidence as a whole shows that the fact sought to be proved is more probable than not. Braud v. Kinchen, 310 So.2d 657, 659 (La.App. 1st Cir.1975); Bee Enterprises, Inc. v. Dennis, 425 So.2d 1007, 1009 (La.App. 5th Cir.1983).
This burden may be met by direct or circumstantial evidence. If, as in the instant case, circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Lacey, 452 So.2d at 164.
A conversion is an act in derogation of another's possessory rights, and any wrongful exercise of assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 760 (La.1985).

DISCUSSION
Defendant was the employee in charge of all accounting and financial record keeping. He had, for the most part, exclusive control over the collection of cash receipts and was responsible for recording the receipts. He was responsible for making bank deposits. He seldom delegated his authority to others. There was no evidence that he ever reported an overage or a shortage of cash.
The defendant denied the allegations and argued other office workers had access to the cash register and safe.
The trial court found that "notwithstanding these alternative hypotheses as to the destination of the missing money, the compilation of testimony preponderates in favor of plaintiffs" and that the defendant "not only knew of the conversion but in fact converted a substantial amount of money from the plaintiffs."
A court of appeal may not set aside a finding of fact by a trial court in the absence of manifest error or unless it is clearly wrong. Lirette v. State Farm Ins., Co., 563 So.2d 850, 852 (La.1990).
*103 After a thorough review of the record and the trial court's reasons for judgment, which are attached hereto as Appendix A, we find no manifest error in the trial court's findings or in the exclusion of other possibilities. The trial court was not clearly wrong in finding Manning, because of his position of responsibility and control over cash receipts, converted monies belonging to the medical partnership for his own use or in excluding the possibility that others, because of their limited access to cash receipts, may have converted funds. For these reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed against Bill Manning.
AFFIRMED.

APPENDIX A

16th Judicial District Court

Parish of St. Mary

State of Louisiana

C.G. Whitley, M.D., et al

versus

Docket No. 71,954

Bill Manning

REASONS FOR JUDGMENT
The trial of this matter was completed on September 9, 1991 in the Parish of St. Mary. Present at trial were Brian M. Tranchina on behalf of the plaintiffs and Robert P. Fuhrer representing the defendant. At the conclusion of the trial, the case was taken under advisement pending post-trial briefs.
The plaintiffs' suit arises from an alleged conversion of funds from receipts collected at plaintiffs' medical office. The defendant was serving as office manager for the medical office during the period of the alleged conversion. The amount in controversy is in excess of $48,000.00.
On the first day of trial, Dr. M.G. Bourgeois testified. He informed the Court that he was a partner with Dr. C.G. Whitley in a medical practice. He said that the defendant was their office manager from January 1981 to February 1983. Defendant's duties were to manage the entire office and personnel. He was in charge of collecting and posting payments on patient accounts.
Dr. Bourgeois testified that there was a high rate of turnover among the office workers. He also said that the business was then affected by the local recession, and experienced a decrease in the amount of money coming into the practice. It was at this point that the doctors asked the defendant to "keep better records." Financial business was to be taken care of on a daily basis and the McBee system of accounting was to be used to keep closer track of the receipts. Dr. Bourgeois testified that after some time under this new regime, the doctors did not note any improvement in the record keeping. Upon closer scrutiny, the doctors discovered that the defendant was not making daily deposits of cash receipts as he had been instructed.
Dr. Bourgeois said that the doctors intentionally placed an additional fifty dollars in the cash register to investigate the efficacy of the accounting system. They expected a fifty dollar overage to show up in the accounting ledger. However, despite that defendant updated the ledger with that day's receipts, the account balance did not indicate a fifty dollar overage.
The doctors then became suspicious of their office manager and confronted him. He denied the accusation that he was responsible for the missing money. Nevertheless the doctors fired defendant. He gathered his belongings and left. Immediately after defendant left, cash was found on the floor near the cash register and the safe.
Dr. Bourgeois testified that defendant never indicated to the doctors that he suspected anyone on the staff was taking money nor that the office was using a faulty posting system.
Dr. Bourgeois said that after the defendant was dismissed, he conducted his own investigation of the accounting books and patient accounts. He found that receipts were recorded in several books but there were no concurrent deposits reflecting these receipts. He estimated that the accounts differed by as much as $48,000.00.
*104 The doctors reported defendant's activities to the law enforcement authorities. However, defendant was not prosecuted.
Rachel McNemar also testified on the first day of trial. She was an office worker supervised by defendant during the period in which substantial amounts of cash receipts were unaccounted. She supported Dr. Bourgeois' testimony as to the office responsibilities of defendant. She stated that all office personnel had access to the cash register but that defendant had exclusive control over posting accounts and making deposits. On the few occasions when defendant was out of the office, one person would be appointed to takeover those tasks. She also testified that on the day defendant was fired, she found a one hundred dollar bill near the cash register in plain view. The implication was that she suspected the defendant placed it there.
Rachel Steely, employed by the doctors for fourteen years, testified that she saw the defendant go into an office with the doctors on the day he was terminated. She saw the defendant come out of the office, take fifty dollars out of his wallet and put it in the safe.
Both Rachel Steely and Tessie Blanco, another office worker, testified that they traced each cash payment on individual client accounts and found that there was the approximately $58,000 which had not been deposited during the period in which defendant was the office manager.
Guy Pitts, a C.P.A. with the accounting firm of Pitts and Matte, testified that he was asked by the plaintiffs to review their accounting records. His report indicated that the sum of $58,334.54 was collected by the medical practice but not deposited into the partnership's bank account during the period January 1, 1981 through February 28, 1983.
During the period immediately following defendant's dismissal, the medical partnership enjoyed a significant increase in income despite the continued local recession.
The burden of proof in a civil case is by a preponderance of the evidence. A preponderance exists when the proof taken as a whole shows that the fact or causation sought to be proved is more probable than not. Maryland Casualty Co. v. Trahan, 384 So.2d 819 (La.App. 4 Cir., 1980). When proof is made by circumstantial evidence, the evidence must be sufficient to exclude, with a fair amount of certainty, every other reasonable hypothesis but the one relied on. Braud v. Kinchen, 310 So.2d 657 (La.App. 1st Cir., 1975) and Bee Enterprises, Inc. v. Dennis, 425 So.2d 1007 (La.App. 5 Cir., 1983).
Counsel for defendant argues that no one actually saw the defendant take any money for his own use. The defendant unequivocally denied the allegations. Counsel for defendant further argues that many people had access to the cash register and that on some occasions other workers collected receipts and made the bank deposits. He argued that money was left in the safe overnight and that most members of the staff had the combination to the safe.
However, notwithstanding these alternative hypotheses as to the destination of the missing money, the compilation of testimony preponderates in favor of plaintiffs. Defendant for the most part had exclusive control over the collection of cash receipts and was responsible for recording these receipts. Defendant was responsible for making bank deposits of all payments collected, whether check or cash receipts. He seldom delegated this authority to other workers. No one questioned his work until it became apparent that income was decreasing. The doctors initially attributed this decrease to the local recession and instituted a more accurate accounting method. It was this new accounting procedure which led to the exposure of the defendant's deceit. The method instituted by the doctors, called the McBee system, had checks and balances which does not allow for discrepancies between income and deposits. Therefore any cash payments converted from the medical practice would be evidenced by receipts issued to patients and credits made to patient accounts.
It was through this accounting system that defendant was caught. When confronted by his employers, he denied their accusations. However, before leaving the building, he was seen by another worker to take money out of his wallet and place it in the safe. Fifty *105 dollars was found in the safe and more cash was found near the cash register. This was apparently an attempt by the defendant to absolve himself. Upon closer inspection by an accounting professional, it was discovered that a substantial amount of cash had been misappropriated. It was the opinion of both plaintiffs' and defendant's C.P.A.s who testified that due to the substantial amount of money unaccounted for, the office manager was clearly in the strongest position to have committed the theft. Both posited that if he did not commit the theft himself, he certainly would have known of it.
A conversion is an act in derogation of another's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Quealy v. Paine, Webber Jackson & Curtis, 475 So.2d 756 (La.1985). It is the opinion of this Court that the defendant not only knew of the conversion but in fact converted a substantial amount of money from the plaintiffs.
One found guilty of tortious conversion is liable in damages. The measure of recovery is the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion. Jackson v. Brumfeld [Brumfield], 442 So.2d 518 (La.App. 1 Cir.1983). In the assessment of damages in cases of offenses and quasi offenses, much discretion must be left to the trier of fact. LSA C.C. art 2324.1; Jordan v. Travelers Ins. Co., 257 La. 995 [245 So.2d 151] (1971) and National Union Fire Ins. Co. v. Spillars, 552 So.2d 627 (La.App. 2 Cir., 1989).
Counsel for defendant cites Unique Const. Co., Inc. v. S.S. Mini Storage. Inc., 570 So.2d 161 (La.App. 5 Cir., 1990) for the position that a judgment awarding no damages is valid where plaintiff fails to prove damages caused by tortious act of defendant, even though defendant is at fault. In the case sub judice, the plaintiffs have proved damages to the satisfaction of this Court.
Rachel Steely and Tessie Blanco testified that they checked patient accounts against deposits and found that a cash shortage existed. Guy Pitts, the C.P.A., prepared guidelines for these employees to follow in verifying the cash shortage. The calculation of the total amount of cash not accounted for of $58,334.54 was arrived at by totaling the total amount of cash received by the business and deducting the total amount of cash which was deposited into the bank and any employee checks cashed, and doctor's drawings (substantiated by chits). The final figure of $58,334.54 was arrived at by an actual physical search of the records by Rachel Steely and Tessie Blanco. As an additional precautionary measure, a statistical sampling was taken by the C.P.A. to ascertain any degree of error occasioned during this process. Mr. Pitts found there to be a 95% confidence level in the work done by Rachel Steely and Tessie Blanco. Defendant's C.P.A., George Trappey, testified that his investigation indicated a 6.42% margin of error in the work done by Rachel Steely and Tessie Blanco. The Court applies the higher margin of error attributed by defendant's C.P.A. and award plaintiffs the sum of $54,589.46.
Defendant requested that he be credited with the $10,000.00 paid to the doctors pursuant to a fidelity bond on Mr. Manning. That $10,000.00 was accrued to the doctors through a collateral source and the Court will therefore not grant defendant a credit for that amount. Defendant shall, however, be credited with $150.00, the amount which he tendered to the doctors on the day of his dismissal (to be deducted from the $54,589.46 awarded above).
Court costs are cast to defendant. A judgment in keeping with these reasons shall be signed upon presentation.
THUS DONE AND SIGNED in Chambers in Franklin, St. Mary Parish; Louisiana, on this 16th day of October, 1991.
 /s/ Michael J. McNulty, Jr.
 Michael J. McNulty, Jr.
 District Judge