452 So.2d 162 (1984)
Lois LACEY
v.
LOUISIANA COCA-COLA BOTTLING COMPANY, LTD.
No. 84-C-0183.
Supreme Court of Louisiana.
June 25, 1984.
James R. Hashek, Singerman, Cosentino, Toups & Troyer, for applicant.
Kurt S. Blankenship, Arthur C. Reuter, Jr., Reuter & Reuter, New Orleans, for respondent.
BLANCHE, Justice.
This is a suit for damages arising out of the consumption of a contaminated beverage. The trial court awarded judgment in favor of Mrs. Lacey in the amount of $6,633.95 against the Louisiana Coca-Cola Bottling Company, Ltd. (Bottler). The appellate court found that Mrs. Lacey failed to produce sufficient evidence to prove that the beverage in question was manufactured by the Bottler and reversed the judgment. 444 So.2d 769 (La.App. 4th Cir. 1984). The sole issue before this Court is the sufficiency of the evidence linking the contaminated beverage with the Bottler.
*163 On the morning of January 2, 1981, Brian McCurley purchased for Lois Lacey a canned Fresca beverage from a Seven-Eleven Food Store located at 6050 Magazine Street in New Orleans. Later that day during lunch, Mrs. Lacey opened the can by pulling the metal tab and drank approximately one-quarter of the beverage. After experiencing a burning sensation on her tongue and in her throat, Mrs. Lacey spat the beverage into the sink. She then poured part of the remaining contents into a styrofoam cup and noticed that it was a greenish color instead of the normal clear color associated with that type of beverage. Other witnesses present at the incident testified at trial that the liquid had a foul acidic odor. Mrs. Lacey immediately went to the rest room to vomit. She then sought medical treatment. The remaining portion and the can were taken to the Seven-Eleven headquarters in Metairie, Louisiana, to be analyzed. Evidence indicated that the beverage had been contaminated.
Mrs. Lacey subsequently filed suit against Seven-Eleven's parent corporation, the Southland Corporation, and their insurer. Mrs. Lacey also named Louisiana Coca-Cola Bottling Company, Ltd. as a defendant. The Southland Corporation filed a motion for summary judgment contending that, as retailer of a sealed container, they could not be liable for damages caused by the contents of that container unless they had knowledge of the defective nature of the contents. The motion was supported by an affidavit signed by Southland's supervisor of the Seven-Eleven Food Store where the contaminated beverage was purchased which stated, in part, that the Southland Corporation purchases canned beverages, including Fresca, from the defendant Bottler for resale in Seven-Eleven Food Stores. The trial court granted the motion thereby dismissing the Southland Corporation from the suit. The case proceeded to trial against the Bottler who was ultimately cast in judgment for $6,633.95. The Fourth Circuit Court of Appeals reversed finding insufficient evidence to connect the Bottler with the contaminated beverage.
At trial, the only evidence presented by either party with respect to the conexity between the Bottler and the contaminated beverage came from Mrs. Lacey's unrebutted testimony. Mrs. Lacey testified that she was informed by the manager at the Seven-Eleven Food Store that the defendant was the bottler of the beverage in question. The Seven-Eleven Food Store employees to whom Mrs. Lacey had returned the beverage informed her that they would get in touch with the defendant Bottler about the contaminated beverage. On cross-examination, defense counsel himself perpetuated testimony from Mrs. Lacey which tended to establish the connection between the Bottler and the contaminated beverage.
Q. You can't tell us today, can you, that Fresca is manufactured by Louisiana Coca-Cola; can you?
A. I brought the cold drink to the store, and they in turn told me at the Seven-Eleven store that it was a Coca-Cola product. They sent me to the Seven-Eleven store in Metairie where, in turn, they said I would get some papers to go to the doctor. At that time, the person there said they couldn't give me any papers from the Seven-Eleven store to go to the doctor because it was a Coca-Cola Bottling product, and I would have to call them. That's another thing that made me so upset. After consuming something I had drank and not knowing what it was and still not being able to get to the doctor because of somebody else's product, and I was getting the run-around.
Q. All you had to go on was what someone at Seven-Eleven told you; is that correct?
A. (No response)
Q. Yes or not, and then explain.
A. At that time, I didn't know who had put out Fresca, no, but I do now know who puts out Fresca.
Q. You know that because someone at Seven-Eleven told you that; isn't that correct?

*164 A. No, I know that because at that time, that instant, they told me Coca-Cola had put the cold drink out, but since then, I personally know that Coca-Cola put the cold drink out.
Q. How do you know that?
A. Because, number one, I have talked to Coca-Cola people, and they admitted they were the ones that put out the product.

Q. Give me specific times and dates that you discussed this with Coca-Cola.
A. Oh, gee, specific times and specific dates. When the incident happened, I called Coca-Cola trying to find out who did I get papers from to go to the doctor, and they in turn gave me a call back finally sometime. I don't know the exact time or date they did call me back, but that was evidence to say they put the product out. They did pay for my medical, so that was proof enough there to say that they put the product out.
Q. You received a check for $288.00 already, haven't you?
A. Yes, that's what they paid for my different tests and stuff I had to have done.
Tr. pp. 37-39. (Emphasis added.)
On redirect, Mrs. Lacey confirmed that the $288.00 check came from the defendant Bottler.
The Bottler now argues that this $288.00 check was actually a settlement offer and, as such, cannot be used at trial as evidence to prove liability. See Champion v. Panel Era Mfg. Co., 410 So.2d 1230 (La.App. 3rd Cir.1982). In this case, however, defendant did not object to this evidence and, in fact, actually initiated the discussion. As such, the trial court could properly take the testimony into account when weighing the evidence against the Bottler. After Mrs. Lacey testified, the defendant put forth no evidence to rebut Mrs. Lacey's testimony.
In a civil case, the plaintiff's burden is to prove her case by a preponderance of the evidence. This burden may be met by direct or circumstantial evidence. If, as in this case, circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (La.1963).
Defendant Bottler argues that plaintiff never proved that the defendant was the bottler that manufactured the contaminated beverage that caused the plaintiff's harm. The Bottler argues that it is possible that the contaminated beverage was supplied by a bottler other than the defendant. Mrs. Lacey's testimony, however, points to only one bottler, the defendant. In this case, Mrs. Lacey's testimony was never rebutted by the Bottler. Under such circumstances, we cannot say that the trial court abused its discretion or committed manifest error in finding the defendant liable.

DECREE
For the reasons stated, the judgment of the Fourth Circuit Court of Appeal is reversed and the judgment of the trial court is reinstated.
REVERSED.
LEMMON, J., concurs, believing that the case does not turn on circumstantial evidence, but rather on unrebutted hearsay evidence, given without objection, which constitutes a preponderance on the issue of the identity of the bottler.