693 So.2d 889 (1997)
Donna Ann GAGLIANO, et al.
v.
AMAX METALS RECOVERY, INC., et al.
Carol Gagliano, Widow of Joseph GAGLIANO, Sr.,
v.
ECODYNE CORP., et al.
Nos. 96-CA-1751, 96-CA-1752.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 1997.
Rehearing Denied May 30, 1997.
*890 Keith R. Credo, Leonard A. Washofsky, Metairie, for Plaintiff-Appellant Carol Gagliano.
John J. Finckbeiner, Jr., Dysart, Sanborn & Tabary, Chalmette, for Plaintiffs-Appellants Donna Gagliano, Joseph Gagliano, and Rosemary Gagliano for Jennifer Gagliano.
Robert E. Barkley, Jr., Nicholas D. Doucet, Barkley & Thompson, L.C., New Orleans, for Defendant/Appellee Ecodyne Corp.
Before KLEES, ARMSTRONG and MURRAY, JJ.
KLEES, Judge.
Plaintiffs appeal the judgment of the district court dismissing their claim against defendant Ecodyne Corporation. Upon our review of the record, we affirm.
This case arises from a fatal accident in the summer of 1988. Decedent Joseph Gagliano Sr. was employed by Amax Metal Recovery, Inc.; among other duties, he was called upon to work atop a forty-two foot tall cooling tower. On July 20 of that year, Mr. Gagliano fell from the top of the tower to his death. No one witnessed the fall.
The stairs used to scale the tower led up to the fan deck on the top of the tower. This fan deck had last been repaired and reworked in September of 1980 by the Ecodyne Corporation. Ecodyne's designs for this fan deck show that the deck would not be even with the landing at the top of the stairs; as finally constructed, there were gaps between the fan deck and some corrugated sheathing at the edge of the deck, and between that sheathing and the stair landing. Both of these gaps have been identified as trip hazards. Apparently only the first gap was included in Ecodyne's plans for the fan deck.
Carol Gagliano, widow of Joseph Gagliano Sr., and Donna Gagliano, Joseph Gagliano Jr., and Rosemary Gagliano as tutrix of the minor Jennifer Gagliano brought suit against Ecodyne Corporation, among others, for survival and wrongful death claims. This case was tried without a jury. During the presentation of plaintiffs' case, Ecodyne was allowed to put on two witnesses out of turn. At the conclusion of plaintiffs' case, Ecodyne moved for an involuntary dismissal. The trial court granted this dismissal, and from this judgment plaintiffs appeal, citing three assignments of error.
Plaintiffs first argue that the lower court erred in granting defendant's motion for involuntary dismissal after the defense had presented a part of its case. Ecodyne was allowed to present two witnesses out of turn; plaintiffs assert that this rendered an involuntary dismissal inappropriate before the close of all evidence.
La.C.C.P. 1672(B) provides that, in an action without a jury, any party may move for a dismissal of the action as to that party, if after the close of the plaintiff's case the plaintiff has shown no right to relief. However, this is not a motion that can be made at any point in the trial. According to Louisiana caselaw, a motion for involuntary dismissal may be made at the close of the plaintiff's case or at the close of all the evidence. It may not be made at points in between. See Blanchard v. Our Lady of the Lake Medical Center, 529 So.2d 1309 (La. App. 1 Cir.1988), writ denied, 532 So.2d 772 (La.1988.)
In the present case, the defense was allowed to put on witnesses out of turn, before plaintiffs had completed presenting their case. Once a defense witness is taken out of turn, a motion for involuntary dismissal can only be entertained at the close of all the evidence. Melady v. Wendy's of New *891 Orleans, Inc., 673 So.2d 1094, 1097 (La.App. 5 Cir.1996), writ denied, 675 So.2d 1088 (La. 1996.)
Ecodyne defends the trial court's dismissal by claiming that plaintiffs' acquiescence to the trial procedure constitutes a waiver to object to this irregularity on appeal. A party's failure to object to a procedural irregularity is generally recognized to constitute such a waiver. See Brady v. Brady, 388 So.2d 57 (La.App. 1 Cir.1980.) Plaintiffs had two separate opportunities to object to the untimely motion for involuntary dismissal, yet failed to object to the court's consideration of the motion at that point in the case. We find this defense persuasive; although the trial court's consideration of the motion for involuntary dismissal was improper, plaintiffs are no longer empowered to object.
Plaintiffs further assert that the motion to dismiss is erroneous in principle; in the second assignment of error, they argue that the lower court erred in finding that the trip hazard created by Ecodyne was not a cause in fact of Gagliano's accident. The trial court's judgment did acknowledge that the plaintiffs have demonstrated negligence on the part of Ecodyne, but refused to grant recovery, finding that plaintiffs had failed to tie the poor planning and construction of the fan deck to Gagliano's fatal fall.
Generally, to recover under a negligence claim, a plaintiff must prove five separate elements: (1) the defendant owed a duty to the injured; (2) the defendant breached that duty; (3) that defendant's conduct was a cause-in-fact of the injuries; (4) that the risk, and the harm caused, were within the scope of protection afforded by the duty breached; and (5) the plaintiff suffered damages. See Roberts v. Benoit, 605 So.2d 1032 (La.1991.)
The trial court found that Ecodyne did have a duty to construct a fan deck free of such trip hazards, that this duty had been breached, and that this was precisely the sort of risk such a duty would guard against. Although Ecodyne strongly disagrees with the trial court's assessment in this regard, we find no reason to disturb it. There can be no question that the plaintiffs in this case have suffered a great loss. However, we agree with the trial court that the plaintiffs' case falters upon the question of cause in fact.
Louisiana courts have recognized two methods of determining cause in fact. Generally, courts undertake a "but for" inquiry: if the plaintiff probably would not have sustained the injuries but for the defendant's conduct, such conduct is a cause in fact. Fowler v. Roberts, 556 So.2d 1, 5 (La. 1989.) In situations where the "but for" inquiry is inadequate, such as when the injury in question may have multiple causes, courts may use the "substantial factor" test. Under this test, cause in fact is identified when the defendant's conduct was a substantial factor in causing the plaintiff's harm. Roberts, supra, at 1042.
Mr. Gagliano's fatal fall was unwitnessed. Although experts in this matter testified as to various theories of why he may have fallen, in the end it is impossible to say that Mr. Gagliano tripped over the trip hazard created by Ecodyne, or even that he tripped at all. Under such circumstances it is impossible to support Ecodyne's liability under a "but for" inquiry; we do not know that either trip hazard had anything to do with Mr. Gagliano's accident. This is an accident with unknown causes, not multiple causes, so a "substantial factor" analysis would be incorrect; the trial court previously rejected the plaintiffs' request to find Ecodyne responsible under the theory of res ipsa loquitur, and we will not resurrect that theory here.
Plaintiffs attempt to rely on language in Roberts v. Benoit, supra, to support their position. In that case, the court spoke of the defendant's negligence as a cause in fact of the resulting injury because it had appreciably enhanced the chances of the accident's occurrence. It could be said that Ecodyne's negligence appreciably enhanced the chance that someone would stumble on the trip hazard and fall from the top of the cooling tower. However, plaintiffs have still failed to prove that Gagliano tripped over the hazard Ecodyne was responsible for, or even that he tripped at all. The "appreciable enhancement" *892 language of Roberts is inapplicable to a case such as the present one, in which ultimate causation is unknown.
In their third and final assignment of error, plaintiffs argue that the trial court erred in finding Ecodyne responsible for only one of the trip hazards. They assert that the lower court failed to properly define the fan deck's boundaries, and point to various work plans prepared by Ecodyne that show a failure to tie in the entirety of the stair landing (the unevenness of which constitutes the second trip hazard) to the fan deck itself.
Ecodyne protests this allegation, pointing out that no evidence introduced at trial ties Ecodyne to this second hazard; they argue that the photographs in evidence do not show unevenness in the construction of the fan deck, but a sheet of plywood atop the stair landing. This plywood was not a part of Ecodyne's plans for the fan deck, and was apparently placed there at some point between Ecodyne's work on the fan deck and Gagliano's accident.
We are unwilling to disturb the trial court's findings in this regard. From the evidence before us, it appears that this second trip hazard does not result from any plans supplied by Ecodyne. Ecodyne's plans, although negligent in allowing for the first trip hazard, can not be held responsible for the stair landing beyond the fan deck, much less any later obstructions placed there in the years following Ecodyne's work on the tower.
For the reasons stated above, we affirm the judgment of the lower court.
MURRAY, J., concurs, with reasons.
MURRAY, Judge, concurring with reasons.
I agree with the result reached by the majority, however, I would add to the discussion of assignment of error No. 3. For that reason I respectfully concur.
The majority states that Ecodyne can not be held responsible for the stair landing beyond the fan deck. I disagree with that proposition. James Danner, a civil engineer testifying for the plaintiffs stated, that in his professional opinion, a design for a deck like the one in this case, must take into consideration the existence of stairwells, and provide for safe, level walking surfaces between the deck and stair landing. The plans provided by Ecodyne did not consider the stairwell and consequently were incomplete. This testimony was uncontradicted. However, there was evidence that the second trip hazard was created by a piece of plywood on top of the stair landing, which the evidence established was put in place after Ecodyne had completed its work.
The reason that Ecodyne is not responsible for the trip hazard between the deck and the stair landing, is not because it cannot be held responsible, but rather, because plaintiffs failed to prove it was responsible for plywood being placed on the stair landing, thereby creating the second trip hazard.
The trial court found that two trip hazards were proven to exist in the area from which Mr. Gagliano fell. It found that Ecodyne was responsible for the trip hazard between the fan deck and the stair landing. The court also found that the plaintiffs had not established that the second trip hazard, the sheet of plywood on the stair landing, was created by Ecodyne. There was no evidence to prove which of the trip hazards caused Mr. Gagliano's fall to his death. The court noted that it was presented with only circumstantial evidence that Mr. Gagliano's fall was caused by the trip hazard for which it found Ecodyne responsible. The court stated that such circumstantial evidence must preclude every other reasonable hypothesis as to the cause of the accident. Because there existed another reasonable hypothesis for the cause of Mr. Gagliano's accident, the court did not find that plaintiffs' had proven by a preponderance that Ecodyne was responsible for the accident.
In Lacey v. Louisiana Coca-Cola Bottling Co., Ltd., 452 So.2d 162 (La.1984), the Supreme Court explained the standard for relying solely on circumstantial evidence to prove one's case. As correctly noted by the trial court, when "circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty." Id. at 164. *893 The Court further explained, however, that a plaintiff is not required to negate all other possible causes. Id. In Lacey, the plaintiff had consumed a contaminated can of Fresca. She alleged that Louisiana Coca-Cola Bottling had manufactured the contaminated product. Coca-Cola argued that it was possible that another bottler had supplied the contaminated liquid. However, Ms. Lacey testified that she had spoken to the "Coca-Cola people, and they admitted they were the ones that put out the product." That testimony was never rebutted by Coca-Cola. The Supreme Court thus held that it was not manifestly erroneous for the trial court to find that Coca-Cola was indeed responsible.
Plaintiffs argue that the trial court erred because Ecodyne was responsible for both trip hazards, and therefore it does not matter which one caused Mr. Gagliano to trip. However, plaintiffs presented no evidence that Ecodyne was responsible for the sheet of plywood on the stair landing which created the second trip hazard. Thus, it cannot be said that the trial court was manifestly erroneous in finding that Ecodyne was not responsible for the second trip hazard, and further, that plaintiffs' did not prove by a preponderance of the evidence over which trip hazard Mr. Gagliano tripped.