Judge Terri F. Love
11 Plaintiffs/Relators seek review of the trial court’s July 19, 2016 judgment granting Hensley R. Lee Contracting, Inc. and Tom Hayden (“Mr. Hayden”) (collectively “HRL”) partial summary judgment and dismissing with prejudice “all claims of racial discrimination, hostile work environment, intentional infliction of emotional distress, and all other claims based on racial animus, including those that fall under the Louisiana Unfair Trade Practices Act.” We find the motions for partial summary judgment do not address Plaintiffs’ claims as pled in their petition. Based on the circumstantial evidence presented and the need for additional discovery, we also find that genuine issues of material fact exist. Accordingly, we grant the writ, reverse the trial court judgment granting partial summary judgment, and remand the matter for proceedings in line with this Court’s writ disposition.

FACTS AND PROCEDURAL HISTORY

Plaintiffs allege the underlying facts as follows: In 2011, the Army Corps of Engineers set out bids for a levee project in Algiers. After the bidding process, the project was awarded to defendant Southern Services & Equipment (“SSE”), who subcontracted the job to defendant Hensley R. Lee Contracting, Inc.[1] HRL then ^subcontracted part of the job to Plaintiffs’ employer, Titan Maintenance and Construction (“Titan”).
According to Plaintiffs, when HRL subcontracted with Titan, Defendants lacked Titan’s levee building experience. Titan worked for approximately one month on the project before it was terminated. Plaintiffs allege that Defendants used the time Titan was employed to procure Titan’s trade practices and plans as well as to learn the levee building skills needed to complete the project. Additionally, Plaintiffs claim that SSE and HRL racially harassed Plaintiffs, created a hostile work environment, prevented Plaintiffs from performing their work, and questioned their abilities and work performance. Furthermore, Plaintiffs contend that SSE and HRL’s actions were intended to drive Titan off the project. Without Titan, the proceeds from the levee project would be split between SSE and HRL, thereby increasing their individual profit shares. In fact, after the project was completed, the Army Corps of Engineers issued all payments on the contract owed to SSE, who in turn paid HRL. Titan, on the other hand, never received payment for its work.
Titan and Plaintiffs filed separate suits against SSE, HRL, and their owners which were later consolidated. The petitions alleged SSE and HRL acted “in collusion to drive [Titan]” off the levee project in violation of the Louisiana Unfair Trade Practices Act (“LUTPA”) and included claims of intentional infliction of emotional distress. Thereafter, HRL and Mr. Hayden filed separate motions for par *1037 tial summary judgment[2] for each plaintiff. Both parties argued that no genuine issue of material fact exists as to Plaintiffs’ claims of racial animus, including ^discrimination and hostile work environment. Opposing partial summary judgment, Plaintiffs averred that genuine issues of material fact remain given the pattern of discrimination and racially derogatory comments and slurs directed at Titan’s African-American employees. Plaintiffs also alleged that genuine issues of material fact remain regarding who among the principal parties worked for HRL and whether their conduct is attributable to HRL. The trial court found that Plaintiffs failed to demonstrate evidence of conspiracy or “gamesmanship” and granted partial summary judgment in favor of HRL and Mr. Hayden. Plaintiffs timely seek supervisory review of the trial court’s ruling.

STANDARD OF REVIEW

On appellate review, courts consider de novo the granting of summary judgment. Brunet v. Fullmer, 00-0644, p. 3 (La.App. 4 Cir. 1/10/01), 777 So.2d 1240, 1241. Appellate courts also use the same criteria that governs the trial court’s consideration of “whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.” Weintraub v. State Farm Fire & Cas. Co., 08-0351, p. 2 (La.App. 4 Cir. 10/29/08), 996 So.2d 1195, 1196-97, quoting Supreme Servs. and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638.
“[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(A)(3). The party filing the summary judgment motion bears the burden of proof. La. C.C.P. art. 966(D)(1). “[I]f the mover will not bear the burden of proof at trial on the issue,” the mover need only “point out to the court |4the absence of factual support for one of more elements essential to the adverse party’s claim, action, or defense.” Id. “Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751, quoting South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La. App. 3rd Cir. 1991).

DISCUSSION

1. Failure to Address Plaintiffs’ Legal Claims

We begin by addressing a procedural aspect of HRL’s partial summary judgment motion. The basis for HRL’s request for partial summary, judgment fails to address the actual claim asserted in Plaintiffs’ petition. Plaintiffs’ petition asserts a claim for unfair trade practices and deceptive acts in knowing violation of LUTPA. The acts and practices that Plaintiffs argue were unfair and deceptive include allegations of racial discrimination and derogatory comments, creating a hostile work environment, and intentionally inflicting emotional distress. Plaintiffs aver that Defendants’ actions were unfair and deceptive within the meaning of LUTPA because they were carried out as part of a *1038 conspiracy to oust Titan from the levee project for Defendants’ economic benefit.
' Inexplicably, HRL fails to address Plaintiffs’ LUTPA claims and instead argues for partial summary judgment based on nonexistent employment law claims that Plaintiffs never raised.[3] The record makes clear that Plaintiffs have asserted an action for unfair and deceptive trade practices. We find no evidence in the ^pleadings or procedural history that suggests otherwise. Therefore, we find as a procedural matter HRL’s argument is unsupported by the record.
We highlight this point to draw a distinction between Plaintiffs’ actual theory of recovery and HRL’s mischaracterization of Plaintiffs’ theory of recovery. HRL moved for partial summary judgment on grounds that Plaintiffs do not have claims for racial discrimination and hostile work environment because HRL was not their employer. Thus, the premise of HRL’s argument is Louisiana employment law. As Plaintiffs contend, HRL relies on the false assumption that Plaintiffs asserted an employment discrimination claim in a veiled attempt to achieve the dismissal of what is in fact evidence (not legal claims) of racial discrimination and hostile work environment.
Even if this Court were to assume that Plaintiffs raised an employment law claim, HRL’s argument is undermined by Plaintiffs’ admissions and HRL’s own actions. Plaintiffs willingly acknowledge that HRL was not their employer. Thus, had they alleged -an -employment law claim, Plaintiffs would have no reason, based on then-own admission, to oppose partial summary judgment. Likewise, HRL could have filed exceptions for no cause of action and/or right of action under state employment law instead of a motion for partial summary judgment. Yet, the only exceptions HRL filed were exceptions of no cause of action and/or right of action under LUTPA.[4]
HRL’s motion marks the first time issues of employment law have been raised or argued. While summary judgment may be rendered only on those issues | fiset forth in the motion under consideration pursuant to La. C.C.P. art. 966(F), the motion itself does not dictate the nature of a petitioner’s claim or the theory of recovery upon which a petitioner seeks redress. Simply because HRL argued in their motion for the dismissal of issues of racial discrimination and hostile work environment under Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq. (which may satisfy article 966(F)) that does not mean Plaintiffs have actually pled a 'cause of action -under La. R.S. 23:301 et seq.
We know of no statute or case law by which an argument raised in a summary judgment motion determines the nature of a petitioner’s claim. Rather, the “nature of a claim is determined by the *1039 pleadings in the case.” Cacamo v. Liberty Mut. Fire Ins. Co., 99-3479, p. 6 (La. 6/30/00), 764 So.2d 41, 46 (citing Jefferson v. Tennant, 107 So.2d 334 (La. App. 2nd Cir. 1958)). “[B]ecause our civil procedure is based on fact pleading, cf. [La. C.C.P. arts.] 854 and 891, the courts must look to the facts alleged to discover what, if any, relief is available to the parties.” Carter v. Benson Auto. Co., 94-158, p. 3 (La.App. 5 Cir. 9/27/94), 643 So.2d 1314, 1315. That is to say, “the [njature of a suit is determined by the facts stated in the petition and the intention of the petitioner in stating the facts.” Lindsey v. Caraway, 211 La. 398, 402, 30 So.2d 182, 183 (1947).
According to Plaintiffs, Defendants’ harassed, intimidated, and discriminated against Plaintiffs for the purpose of driving Titan off the levee project for Defendants’ economic benefit. In light of Defendants’ alleged conduct, Plaintiffs’ petition asserts claims of unfair and deceptive trade practices in violation of LUTPA and of intentional infliction of emotional distress. Further, Plaintiffs argued in their opposition to HRL’s motion and reiterated at the hearing that the nature of their claim arises under LUTPA as that was always their intent |7when stating the alleged facts in their petition. Again, Plaintiffs’ admission that HRL was not their employer further underscores that it has always been Plaintiffs’ assertion that this is an unfair trade practices case. Therefore, a finding that HRL’s motion properly raised issues of employment law to satisfy La. C.C.P. art. 966(F) and that the trial court addressed those issues in its judgment is irrelevant where Plaintiffs have not alleged employment law claims.
We find HRL’s request for dismissal of the racial animus and hostile work environment issues based on nonexistent employment law claims is error. Thus, granting partial summary judgment was incorrect. In that the motion fails to address Plaintiffs’ LUTPA claims, it is unresponsive and therefore, summarily denied.

2. Exclusion of Plaintiffs’ Factual Allegations

We address in this part what we find is a legal error in the trial court’s analysis on summary judgment. Plaintiffs allege HRL conspired with SSE to engage in certain unfair practices and deceptive acts which violated LUTPA. The trial court reasoned that “without actually having heard racially discriminatory language or experienced racially discriminatory conduct, plaintiffs are unable to meet their burden of proof that defendants HRL and Tom Hayden’s conduct violated LUTPA.” The trial court dismissed all claims involving racial animus under LUTPA (or otherwise) as a result. We find the trial court improperly conflates Plaintiffs’ legal claims with the factual allegations that support those claims.
It is true that racial discrimination'and hostile work environment are recognized legal theories of recovery subject to summary judgment dismissal; however, as previously explained, Plaintiffs have not asserted stand-alone causes 18of action under Louisiana employment law. Plaintiffs allege Defendants conspired to terminate Titan in knowing violation of LUTPA.
The inquiry on a motion for summary judgment where a petitioner alleges a LUTPA violation is whether defendant’s methods, acts, or practices were unfair or deceptive within the meaning of LUTPA. To prove that Defendants were not merely exercising permissible business judgment, Plaintiffs produced evidence of actions by Defendants which Plaintiffs claim' is tantamount to unfair or deceptive acts in the conduct of Defendants’ business operations within the scope of LUTPA. Thus, Plaintiffs’ allegations represent the evidentiary facts that support the alleged conspiracy to *1040 engage in deceptive acts that were intended to unfairly eliminate Titan as a competitor.
The racial animus, hostile work environment, and infliction of emotional distress were merely some of the means by which Defendants allegedly carried out their scheme to terminate Titan. In that the foregoing allegations embody only a portion of the methods Defendants used to remove Titan, Plaintiffs also offer other evidence. Specifically, Plaintiffs claim Defendants questioned their work performance and abilities, blocked their work progress, made unnecessary change orders, sent “bogus notices of corrective active action,” and instructed Plaintiffs to perform work in contradiction to project plans and industry-accepted standards. The collection of these practices, together, were intended to confuse, intimidate, interfere with production, cause delays within Titan’s crew, and ultimately cause Titan’s failure to comply with its sub-contract. Therefore, we find the factual allegations at issue in this writ (i.e. racial animus and hostile work environment) are simply component parts of Plaintiffs’ overarching claim that Defendants conspired and engaged in various deceptive acts which violated LUTPA.
|flIn light of our finding, we note the practical outcome of the trial court’s ruling. The trial court’s dismissal of Plaintiffs’ allegations of racial animus and hostile work environment in effect determines what evidence Plaintiffs may introduce at trial. In this way, the trial court’s ruling is more akin to a ruling on a motion in limine. The trial court’s ruling functions not to dismiss legal issues of racial animus and hostile work environment but to exclude the evidence of either at trial.
Nevertheless, summary judgment is a procedural vehicle for dismissing issues of law and/or fact that are not in dispute. A material fact, however, is not the same as a petitioner’s theory of recovery. A material fact supports a petitioner’s theory of recovery. “A fact is ‘material’ when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” Sutherland v. Alma Plantation, L.L.C., 15-1136, p. 4 (La.App. 4 Cir. 5/4/16), 193 So.3d 1178, 1181, writ denied, 16-1044 (La. 9/16/16), 206 So.3d 208 (citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). The allegations of racial discrimination, hostile work environment, the questioning of Titan’s work performance and abilities, and the intentional slowing of Titan’s work progress are not separate theories of recovery. They are the operative facts Plaintiffs allege support their claim that Defendants conspired to unfairly terminate Titan. Plaintiffs contend that the existence of Defendants’ deceptive acts is essential to support their cause of action for damages under the applicable theory of recovery in this case—the knowing violation of LUTPA.
Insofar as its ruling addressed issues of fact, the trial court found no genuine issue of material fact existed as to the allegations of racial animus and hostile work | ^environment. Although the trial court’s ruling does not preclude Plaintiffs from pursuing their LUTPA claim with evidence of Defendants’ other alleged conduct, we find genuine issues of material fact remain as to HRL’s role in the alleged racial discrimination and hostile work environment. As explained in greater detail below, the trial court’s determination relied on its own credibility determinations and the weighing of testimony with respect to who represented and worked for HRL and HRL’s motivation and intent. Therefore, to the extent the trial court’s ruling also dismissed certain evidentiary proof of Plain *1041 tiffs’ LUTPA claims, we find the trial court committed legal error.

3. Issues of Material Fact

On supervisory review, we do “ ‘not give deference to the trial court’s judgment or its reasons therefor ... A trial court’s reasoning for granting a summary judgment may be informative, but it is not determinative of the issues to be resolved by this court.’” S. Louisiana Ethanol L.L.C. v. CHS-SLE Land, 14-0127, p. 7-8 (La.App. 4 Cir. 2/4/15), 161 So.3d 83, 88, writ denied, 15-0481 (La. 5/15/15), 170 So.3d 967, quoting, Jones v. Buck Kreihs Marine Repair, LLC., 13-0083, p. 1-2 (La. App. 4 Cir. 8/21/13), 122 So.3d 1181, 1183.
Conspiracy by itself is not recognized in Louisiana as an actionable claim. Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co., 14-0323, p. 9 (La.App. 4 Cir. 10/1/14), 151 So.3d 670, 676 (citing Crutcher-Tufts Resources, Inc. v. Tufts, 07-1556, p. 3 (La.App. 4 Cir. 9/17/08), 992 So.2d 1091, 1094). “The actionable element of a conspiracy claim is not the conspiracy itself but the tort the conspirators agree to perpetrate and actually commit in whole or in part.” Id.; Ames v. Ohle, 11-1540, p. 11 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, 393. Plaintiffs’ conspiracy claim as pled in their petition identifies HRL’s violation of InLUTPA as the underlying tort forming the basis for the alleged conspiracy. In Prime, this Court explained:
Proof of conspiracy can be by actual knowledge of both parties or overt actions with another, or can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator. . .The plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy. The assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy.
Id., 14-0323, p. 10, 151 So.3d at 677 (internal citations and quotations omitted)(emphasis added); also Thomas v. North 40 Land Development, Inc., 04-0610, p. 22 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160, 1174.
Pursuant to LUTPA, it is unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. La. R.S. 51:1405(A). Acts constituting unfair or deceptive trade practices are not specifically defined but are determined on a case-by-case basis. Prime, 14-0323, p. 12, 151 So.3d at 678. This Court has defined an “unfair trade practice” as one that is “unethical, oppressive, unscrupulous, or substantially injurious.” Bolanos v. Madary, 609 So.2d 972, 977 (La. App. 4th Cir. 1992). Acts which generally constitute unfair trade practices involve fraud, deception, misrepresentation, breach of fiduciary duty, or other unethical conduct. Action Revenue Recovery, L.L.C., v. eBusiness Group, L.L.C., 44,607, p. 9 (La.App. 2 Cir. 8/19/09), 17 So.3d 999, 1004. A critical factor in such cases is the defendant’s motivation, and the actions must have been taken for the purposes of harming the competition. Monroe Surgical Hosp., LLC v. St. Francis Med. Ctr., Inc., 49,600, 49,608, p. 29 (La.App. 2 Cir. 8/21/14), 147 So.3d 1234, 1250, writ denied, 14-1991 (La. 11/21/14), 160 So.3d 975. Additionally, the U.S. Fifth Circuit explained 112that “intent to eliminate the competition does not itself violate LUTPA. Rather,’ the statute forbids businesses to destroy each other through improper means.” Turner v. Purina Mills, Inc., 989 F.2d 1419, 1423 (5th Cir. 1993). Therefore, the question on summary judgment is whether the evidence is sufficient that a jury may disagree as to whether Defendants’ conduct was *1042 unfair, and deceptive within the meaning of LUTPA.
Plaintiffs contend that HRL, acting in collusion with all other defendants, embarked on a course of deceptive, unfair, and prohibited conduct with the intent to terminate Titan’s sub-contract in order to increase their profit margins. As Plaintiffs aver, “[t]he conduct perpetrated as a means to that end [is what] violated LUT-PA.” Specifically, it is alleged that Defendants conspired to create a hostile work environment through the intentional infliction of emotional distress and racial discrimination which would affect Plaintiffs’ ability to properly perform their job duties and allow HRL to terminate Titan’s subcontract.
In support of partial summary judgment, HRL argues that the deposition testimony reveals Plaintiffs cannot meet their burden of proving that HRL conspired with other defendants to intentionally inflict emotional distress, create a hostile work environment, and/or racially discriminate against Plaintiffs. HRL avers that there is no evidence that HRL or its employees engaged in racial discrimination, made discriminatory remarks, or participated in a scheme to push Titan off the levee project. In opposition, Plaintiffs contend deposition testimony proves genuine issues of material fact remain as to whether HRL conspired to create a hostile work environment through the intentional infliction of emotional distress and racial discrimination.
Based on the pleadings and supporting evidence, we find Plaintiffs | ^submitted sufficient evidence that at the very least warrants, further discovery before eonsid-eration of partial summary judgment. First, a genuine issue of material fact exists as to whether Leonard Stephens (“Mr. Stephens”) worked for HRL or represented HRL and whether his actions may be attributable to HRL. Seeond, HRL’s motivation is a critical factor in determining whether they intentionally engaged in deceptive conduct to terminate Titan’s subcontract. Considering the deposition testimony of HRL and Mr. Hayden (principal parties to the action) has not taken place, we find partial summary judgment is premature. We discuss both reasons within the context of the evidence presented.

A. Leonard Stephens and HRL’s Business Relationship

Plaintiffs allege evidence shows that Mr. Stephens worked for and/or represented HRL, and his actions (in addition to the actions of others) demonstrate the racial animus and hostile work environment to which Plaintiffs were subjected. HRL disputes this claim, arguing that references to Mr. Stephens do not create a genuine issue of material fact sufficient to overcome summary judgment because he did not work for HRL. Alternatively, HRL avers that even if Mr. Stephens worked/represented HRL, Plaintiffs cannot overcome summary judgment because they did not personally observe Mr. Stephens express any racial animus or use racially derogatory language.
Mr. Stephens testified that his company, L & L General Contractors, had a contract with HRL to maintain the staging area, which entailed maintaining the dirt stockpile and ensuring trucks and materials made it to the project area. Mr. Stephens believed that based on his contract with HRL, he and another HRL representative would be working at the project site; however, later HRL sent additional workers. Mr. Stephens testified that- he did not work for HRL.
[ uConversely, SSE understood Mr. Stephens worked for HRL. SSE president Mark Nunez testified that when he met with HRL to discuss its, participation in the levee project, HRL .was represented *1043 by Hensley Lee, J.J. Lee, and Mr. Stephens. SSE employee Mindy Airhart testified that she always understood Mr. Stephens worked for HRL because she was instructed to send him. corrective actions that needed HRL’s approval. Additionally, SSE’s project manager testified that he did not recall seeing L & L General Contractors listed as a subcontractor .of HRL. Neither Mr. Stephens, nor his company L & L General Contractors, had a contract with SSE or the Army Corps of Engineers. Titan also believed Mr. Stephens worked for HRL. Titan principals and Plaintiffs’ supervisors Darren Malbrough, Bradley Cooper, and Robert King, testified that Mr. Stephens told them that he worked for HRL. Titan’s owner/operator Mr. Malbrough testified that Mr. Stephens worked for HRL and spoke on their behalf.
With respect to Mr. Stephens’ conduct, Mr. Marlborough testified to having heard Mr. Stephens make racial slurs regarding African-Americans. Mr. Malbrough testified that he approached Mr. Stephens about the racial tension and project issues his company was experiencing. Mr. Stephens, as representative of HRL, responded, “[ejverybody should own one, shouldn’t they.” Mr. Malbrough stated that Mr. Stephens was referring to a “black man.” Likewise, Mr. Cooper testified that he also heard Mr. Stephens make a racially derogatory comment about one of Titan’s employees. Mr. Cooper recalled Plaintiff James “Mike” Long operating Mr. Stephens’ bulldozer and Mr. Stephens saying, “What’s that n***** doing running my equipment? There ain’t no n*****s running my s****.”
' HRL argues that because Plaintiffs did not personally observe Mr. Stephens make these comments, Plaintiffs may not rely on it as evidence in opposition to Impartial summary judgment. The fact that Plaintiffs did not observe Mr. Stephens make the racial slurs is of no moment. Plaintiffs contend that it is relevant circumstantial evidence of the racial animus and hostile work environment Plaintiffs allege. HRL helped facilitate. Therefore, we find the evidence sufficient to demonstrate material issues remain as to Mr. Stephens’ employ, his role in the levee project, and his alleged conduct.

B. Respondents’ Motivation and Intent

It is widely accepted that “summary judgment is not a substitute for a trial on the merits, and is inappropriate for judicial determination of subjective facts, such as motive, intent, good faith, knowledge, and malice.” Prime, 14-0323, p. 10, 151 So.3d at 677. Subjective facts like these call for credibility determinations and weighing of the testimony. Id. Further, it is “rarely appropriate' for the disposition of issues requiring a determination of the reasonableness of acts and conduct of parties under all the facts and circumstances of a case.” Id. (citing Greater Lafourche Port Com’n v. James Const. Group, LLC, 11-1548, p. 7 (La.App. 1 Cir. 9/21/12), 104 So.3d 84, 88). The underlying question in any unfair trade practices case is whether the defendant’s acts and conduct were reasonable.
Acts which constitute unfair trade practices generally involve fraud, deception, misrepresentation, breach of fiduciary duty, or unethical conduct. Action Revenue Recovery, 44,607, p. 9, 17 So.3d at 1004. HRL’s motivation and intent are critical factors in determining whether HRL’s conduct was unfair or deceptive and part of an underlying agreement to terminate Titan’s sub-contract. See Monroe Surgical Hosp., 49,600, p. 29, 147 So.3d at 1250 (finding motivation is a critical factor in LUTPA claims and the defendant’s actions must have been' taken for the purpose of harming the competition).
*1044 |1fiDue to the inherent difficulties of proving intent, an aggrieved party is not required to offer direct evidence of a defendant’s intent to deceive. Courts have held that the intent to deceive may be determined from the attending circumstances. Lacey v. Louisiana Coca-Cola Bottling Co., 452 So.2d 162, 164 (La. 1984). Likewise, a plaintiff may use circumstantial evidence to defeat a motion for summary judgment. Wood v. Becnel, 02-1730, p. 5 (La.App. 4 Cir. 2/26/03), 840 So.2d 1225, 1227; Florane v. Pendleton Memorial Methodist Hosp., 02-0165 (La.App. 4 Cir. 5/29/02), 822 So.2d 642; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226.
Granting partial summary judgment, the trial court reasoned that “without actually having heard racially discriminatory language or experienced racially discriminatory conduct, plaintiffs are unable to meet their burden of proof that defendants HRL and Tom Hayden’s conduct violated LUTPA.” We disagree. Evidence of racial animus is seldom blatant and obvious. In most instances, there is an attempt to conceal the discrimination with a pretext—an innocuous, nondiscriminatory reason for the adverse action.[5] If the need for proof of direct racial discrimination were required, it would be virtually impossible for a plaintiff to present evidence of discrimination to a jury. Therefore, circumstantial evidence which gives rise to the inference of discrimination may be used to overcome summary judgment.
The same is true of the alleged conspiracy. Circumstantial evidence is sufficient if it gives rise to the inference that HRL conspired or was complicit in the actions taken by others to unfairly terminate Titan. In this case, the disposition 117of material fact issues requires a determination of the reasonableness of HRL’s action and/or inaction under all the facts and circumstances of this case. Prime, 14-0323, p. 10, 151 So.3d at 677 (citing Greater Lafourche Port, 11-1548, p. 7, 104 So.3d at 88).
Therefore, we disagree with HRL that Plaintiffs are unable to meet their burden of proof because they did not personally experience or witness racial animus. Testimonial evidence implicating Mr. Hayden as well as alleged employees and/or representatives of HRL indicates otherwise. Further, the. conduct of SSE and its employees is also relevant circumstantial evidence that creates an issue of material fact. Even if we were to conclude no genuine issue of material fact remains as to whether HRL actively contribute to the discrimination and hostilities Titan experienced, which we do not, an issue of material fact remains as to whether HRL was complicit in the alleged conspiracy.[6] For both reasons, we find Plaintiffs submitted sufficient evidence from which a jury may infer that HRL participated or was complicit in the alleged conspiracy.
We note that Plaintiff Nathaniel White specifically testified to his encounter with Mr. Hayden. Mr. White’s supervisor instructed him to retrieve water from HRL’s side of the project because the pump on his truck was broken. Claiming Mr. White was driving too fast, Mr. Hayden stopped *1045 Mr. White’s truck and threatened to have him “run off the job.” Mr. Hayden continued, that his “black a** shouldn’t be over here anyway.” Mr. Hayden asked what Mr. White’s “black a**” was doing by the water tank.
| isAlthough “black” as an identifying adjective is not always evidence of racial animus, “it does not follow that the term, standing alone, is always benign. The speaker’s meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage.” Ash v. Tyson Foods, Inc., 546 U.S. 454, 456, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006). Even assuming Mr. Stephens did not work for or represent HRL, Mr. Hayden’s remark (at minimum) raises genuine questions of material fact of HRL’s part in the alleged racial discrimination and hostile work environment.
Mr. White also testified that HRL would routinely leave its trucks in the work area, taking the keys with them and preventing Titan from continuing its operations. Mr. White stated that after Titan was fired he was hired by HRL, and he no longer experienced any problems or encountered any racial issues. Mr. White testified that he “worked there long enough to know.. .as long as [Titan] w[as] there., .there was a problem.” The change of conduct following Titan’s departure is evidence from which a jury may infer that it was Defendants’ motive and intent to oust Titan and take its share of the benefits of the project.
Plaintiff Jarrod Burrle testified to overhearing and personally experiencing racial animus and hostility on the job. He testified to hearing SSE’s quality control officer Elliot Bordelon use the “n-word” while referring to Plaintiff Joseph Encalade’s brother. He also heard Mr. Bordelon tell another person that he had not “fired or ‘fed’ a ‘n-word’ in a long time.”
Similarly, Mr. Burrle attested that Mr. Stephens referred to him as “boy.”[7] Mr. Burrle described one incident when his track’s gas tank began overflowing. | t ¡(After seeing what happened, Mr. Stephens responded to Mr. Burrle, “Boy, I should fire your a**, boy....Boy, you’re going to pick up all this trash around. If you don’t pick up this trash, I’m going to get rid of you’re a**.” Mr. Burrle testified that he reported the incident to Mr. Marlborough who later spoke to Mr. Stephens. Mr. Burrle stated, “at that point, [Mr. Stephens and Mr. Hayden] always had an eye towards me every time I come around there. At times they would just stand there and look at me like I’m stupid, like they were trying to intimidate me.”
Moreover, Plaintiffs testified that it was generally understood that Titan’s African-American employees were not to use the bathrooms or port-o-lets on the job site. Plaintiff Long testified that he overheard Mr. Bordelon state that he did not want any “n-word” using his bathroom. Plaintiff Tarik Lopez stated that Plaintiff Joseph Encalade told him that he was not allowed to use the bathroom in the trailer. Plaintiff Joshua White also stated he was told African-Americans could not use the port-o-let. Plaintiff Brian Balthazar testified that he used the trailer bathroom and the port-o-let, but later heard someone say that Mr. Bordelon did not want the “little ‘n-word’ ” using the trailer bathroom again. Plaintiff Balthazar also testified that Plaintiffs often resorted to relieving themselves outside.
Plaintiffs allege the harassment continued when Titan hired additional African-Americans and that Titan was pressured *1046 to perform work in an “improper, dishonest, and unsafe manner.” Plaintiff John Pecoraro testified that Mr. Bordelon often made mean and disgusting comments and that Mr. Bordelon demeaned and criticized him. He further claimed Defendants referred to Titan’s African-American employees as “n******.” He also indicated HRL confronted him about his job performance despite the fact that he remained on schedule and his work met industry standards. HRL “falsely accused him of inaccurate surveying.” | ^Thereafter, HRL hired another surveying company to check his work, whose results matched Plaintiff Pecoraro’s.
Additionally, Plaintiff Balthazar attested to the threatening atmosphere. On one occasion, Mr. Stephens nearly ran him over with a bulldozer. In his deposition testimony, he expressed his concern that Defendants would try to hit him with the bulldozer again and “bury” him. Defendants questioned the work and skill level of Titan’s African-American employees and instructed' them not to use equipment belonging to Defendants. Testimony also reveals Mr. Hayden falsely accused a plaintiff of dirt contamination and an HRL employee was told not to help Plaintiff Long push dirt on the job site.
In response to the growing hostility, Plaintiffs raised the issue of racial tension with their supervisors. Titan began holding meetings regularly with its crew to discuss “perseverance” in the face of the racial animus the crew experienced. Plaintiff White stated that “perseverance” was part of the crew’s “plan of action” on the levee project. Still, Plaintiff White stated that he could not escape the racially motivated conduct, slurs, and tensions on the job.
Plaintiffs assert that, on behalf of its employees, Titan’s principals complained about the hostile work environment and racial animus that developed. The petition claims and testimony reveals the complaints resulted in Mr. Bordelon allegedly making a number of racially inflammatory comments, including disparaging Titan’s principals for “taking up for a n*****.”
At a meeting between SSE and Mr. Stephens, Mr. Malbrough testified that Mr. Stephens told him that Titan needed to fire Mr. King and Mr. Cooper or HRL would terminate Titan’s sub-contract. Both men were subsequently terminated. SSE president Mr. Nunez testified that any decision to let Titan employees go was | ai the responsibility of HRL, not SSE. Mr. Nunez’s assertions also indicate that the firing of Mr. King and Mr. Cooper was HRL’s responsibility. As to Mr. Stephens’ insistence that Titan fire Mr. King and Mr. Cooper, Mr. Nunez stated that it was HRL that “needed to do something” to get on schedule.
Plaintiffs make several factual allegations that involve HRL, its employees, Mr. Stephens, Mr.' Hayden, and Mr, Bordelon of SSE including: attacks directed at African-American Titan employees; attacks directed at Caucasian “Northshore” Titan employees, and attacks directed at the actual levee work Titan performed. Moreover, the depositions of HRL, Mr, Hayden, and Mr. Bordelon have yet to take place.
At the very least, we find additional discovery warrants denial of partial summary judgment. See Fischer III, LLC v. Williams, 14-0492, p. 11 (La.App. 4 Cir. 12/17/14), 156 So.3d 1255, 1261 (denying summary judgment due to discrepancies found in the sub-leases and the need for more discovery). Plaintiffs expressly indicated in their opposition to partial summary judgment that discovery in this case was incomplete.[8] This Court reviews sum *1047 mary judgment de novo, and the deposition testimony of HRL, Mr. Hayden, and Mr. Bordelon is relevant to the issues before the court on summary judgment. The core of Plaintiffs’ alleged conspiracy and LUTPA claims are issues of motive and intent, which are subjective facts that are rarely appropriate for judicial determination on summary judgment. Likewise, Plaintiffs’ LUTPA claims are fact-intensive and rest heavily on the conduct of all three actors. Moreover, there are several genuine issues of | ¡^material fact that cannot be resolved at this stage of the proceedings. Consequently, because the principal actors have yet to be deposed we find partial summary judgment inappropriate and remand for additional discovery warranted. Therefore, after review of the application in its entirety we find genuine issues of material fact exist as to HRL’s part in the alleged conspiracy to terminate Titan’s sub-contract in violation of LUTPA.

DECREE

Considering the unresponsive nature of HRL’s motion for partial summary judgment, the direct and circumstantial evidence presented, and the need for additional discovery, we find genuine issues of material fact. Therefore, we find the trial court erred in granting HRL’s motion for partial summary judgment. Accordingly, Plaintiffs’ writ application is granted; the trial court’s July 19, 2016 judgment granting HRL partial summary judgment is reversed; and the case is remanded for further proceedings in line with this Court’s disposition.
WRIT GRANTED; REVERSED AND REMANDED
McKAY, C.J., CONCURS IN THE RESULT
DYSART, J., DISSENTS FOR THE REASONS ASSIGNED BY JUDGE JENKINS
JENKINS, J., DISSENTS WITH REASONS
McKAY, C.J., CONCURS IN THE RESULT
|¾1 find that there ’are genuine issues of material fact that preclude the granting of summary judgment.
DYSART, J. DISSENTS FOR THE REASONS ASSIGNED BY JUDGE JENKINS.

. For ease of discussion, we refer to the named defendants of the consolidated cases collectively as "Defendants.”

. For ease of discussion, we refer to HRL’s motions (in the plural) collectively in the singuiar tense.

. HRL devotes significant portions of the motion arguing various aspects of employment law including citation to La. R.S. 23:303(A), notice requirement prior to filing suit against an employer, employment agency, labor organizations, and case summaries involving racial discrimination, hostile work environment, and intentional infliction of emotional distress in suits filed by employees against their employer.

. Until the filing of the motion for partial summary judgment, at all stages of the present litigation HRL has acknowledged that Plaintiffs assert claims under LUTPA, including when HRL sought to remove the case to federal court. Moreover, Judge Engelhardt recognized in the order of remand that Plaintiffs’ petition set forth claims pursuant to LUTPA. Malbrough v. Hensley R. Lee Contracting, Inc. unpub., No. Civ. A. 12-1166, 12-1167, 2013 WL 160280, at *1 (E.D. La. 1/15/13).

. Cf., Barbe v. A.A. Harmon & Co., 94-2423, 94-2424 (La.App. 4 Cir. 1/7/98), 705 So.2d 1210; McGee v. State, ex rel. DOTD, 00-2706 (La.App. 1 Cir. 3/28/02), 813 So.2d 625.

. Notably, there is no evidence in the record that HRL attempted to resolve or address Titan’s concerns when it brought to HRL’s attention the issues of racial tension and hostility Plaintiffs’ experienced. Nevertheless, we find that HRL’s inaction, when coupled with evidence of the conduct of SSE and its employees, is sufficient evidence that a trier of fact may infer that HRL was complicit in the alleged conspiracy to drive Titan off the levee project for Defendants’ economic benefit.

. See Ash, supra, 546 U.S. 454, 456, 126 S.Ct 1195 (2006) (noting whether language is evidence of racial animus courts may look to outside factors to determine speaker’s meaning).

. As of the time of the hearing on the motion HRL, Mr. Hayden, and Mr. Bordelon had not *1047 been deposed, Plaintiffs stated in their opposition that the delay was the result of unavoidable scheduling conflicts and Mr. Bordelon’s failure to provide the parties with his availability for purposes of scheduling his deposition.